[No. 14174. Department Two. January 18, 1918.]

O. W. BROWN, *Appellant*, v. T. H. BREW, *Respondent*.[1]

CONTRACTS—CONSIDERATION—SUFFICIENCY — BENEFIT TO PROMISOR. Where it was to plaintiff's advantage to cancel a contract for the sale of timber lands because he was unable to perfect title, the cancellation is not sufficient consideration for an agreement by defendant to the effect that, if the defendant ever purchased certain timber, he would do so through plaintiff and pay him a commission.

SAME—CONSIDERATION—MUTUAL PROMISES. An agreement with a broker to purchase certain timber lands, if at all, through the broker and pay him a commission, if he is then engaged in the brokerage business, in consideration of an agreement by the broker to secure the timber at the lowest price possible and protect the buyer's interests, is lacking in mutuality and not supported by a sufficient consideration; the mutual promises being insufficient, since the broker did not obligate himself to sell to the other party, or act as his agent, or refrain from selling to some one else.

Appeal from a judgment of the superior court for Pierce county, Chapman, J., entered December 12, 1916, upon findings in favor of the defendant, in an action on contract, tried to the court. Affirmed.

*Alexander & Bundy*, for appellant.

*Fitch, Jacobs & Arntson*, for respondent.

[1]Reported in 169 Pac. 992.

MORRIS, J.—Appellant brought this action to recover a commission on the purchase of timber, basing his right of recovery upon the following contract:

"This agreement made and entered into this, the 11th day of November, 1912, by and between T. H. Brew of Puyallup, Washington, and O. W. Brown, of Seattle, Washington.

"Witnesseth: That the said T. H. Brew has this day entered into an agreement with said O. W. Brown, that if at any time in the future, the said T. H. Brew or any of his subsidiary companies, purchases the timber or land and timber on the northeast quarter of section thirty-four, in township twenty-seven, north range seven, east of the Willamette Meridian, and the said O. W. Brown is at said time engaged in the timber brokerage and cruising business in this part of the country, the said T. H. Brew will purchase the same through said O. W. Brown as agent and will pay to said O. W. Brown a commission of five per cent of the purchase price of said timber, and the said O. W. Brown agrees that he will use his best efforts to secure said timber for said T. H. Brew at the lowest possible price, the said O. W. Brown agreeing to represent said T. H. Brew and protect his interests in the matter of said purchase.

"In witness whereof the said parties hereto have set their hands in duplicate the day and year herein first above written.                              (Signed) T. H. Brew

"O. W. Brown.

"Acknowledged Nov. 11, 1912.        .    O. W. Brown."

The execution of the contract is admitted, as is also the subsequent purchase of the timber by Brew, the finding for respondent by the lower court being based upon the conclusion that the contract was lacking in mutuality, was uncertain and indefinite, and void for want of consideration.

The transactions between appellant and respondent were these: In September, 1912, they entered into a contract whereby appellant agreed to sell, and respondent agreed to purchase the timber described in the contract, known as the Upper timber, together with another tract, known as the O'Neil tract. Upon this contract respondent deposited $5,-000 as a guarantee of his performance. This contract pro-

vided that abstracts of the two properties should be submitted to attorneys of respondent, whose opinion on the title should be conclusive. Objections were found to the title of the Upper tract which appellant undertook to cure, but was unable to do so within the time granted for that purpose. Four days before the expiration of this first contract under its several extensions, the contract in question was entered into.

Appellant first contends that the release of the $5,000 deposit, as a guarantee of performance of the first contract, was a sufficient consideration for the contract sued upon. We do not think so. Neither can we understand how appellant, who theretofore had been acting for himself as a seller, is, by the second contract, made an agent of the respondent for the purchase of the timber. It is clear to us, as to the lower court, that the purpose of appellant in seeking to relieve himself from the burden of the first contract was that the O'Neil tract was about to be withdrawn from the market, and that, in such event, he would lose the sale of both tracts. Under these circumstances, it was to his advantage that the first contract should be cancelled. The benefit was to him and not to respondent.

Appellant next contends that the contract sued upon is enforcible as containing mutual promises. A promise for a promise is a sufficient consideration for any contract, but there is no dispute in the law that such promises, in order to be binding, must be mutual, concurrent and obligatory upon both parties to the contract; both parties must be bound at one and the same time, otherwise there is no contract. This contract is vague, uncertain and indefinite. There is no obligation on the part of one to purchase, nor on the part of the other to sell; all it provides is that, if Brew or his subsidiary companies should purchase, and Brown is, at that time, engaged in the timber brokerage business, Brew will purchase through Brown as his agent, and pay five per cent

commission, but Brew could not compel Brown to act for him or any of his subsidiary companies in the purchase of the timber, or to withhold a sale until Brew was ready to purchase. Brown nowhere obligates himself to sell to Brew, nor to purchase as Brew's agent. Assuming that Brown was in position to control the purchase of this timber, he does not obligate himself to purchase for Brew. Five minutes after the execution of the contract, Brown might have sold the timber to any other person and Brew would be without remedy. Brown admits that, subsequent to the date of this contract and before the purchase by Brew, he offered this timber for sale to John McCrimmins, of Aberdeen, and Edward Lee, of Grand Rapids. The contract is silent as to any act to be performed by Brown. He agrees only to use his best efforts to represent Brew. Mutuality of obligation is not essential to a contract when there is other valid consideration, as unilateral contracts, based upon a sufficient consideration, are enforcible; but where, as in this case, there is no other consideration but the promise, there must be mutuality to make a binding contract. 6 R. C. L. 686, 687. There is, in this contract, no consideration nor promise moving from one to the other that can be enforced. Brown not being obligated to purchase for Brew, there could be no obligation on the part of Brew to purchase through Brown. Brown could not say to Brew, I can purchase this timber for any one I please or sell to any one who will buy of me, but you can only purchase through me. It is obvious that Brown, not being bound by any agreement to purchase for Brew, could not invoke the aid of the courts to compel Brew to purchase through him. His right in this respect cannot depend upon anything subsequent to the contract, but must depend upon the obligations assumed in the contract. Elliott, Contracts, § 231. These are recognized principles, well supported by our own cases. *Hawley v. Kenoyer*, 1 Wash. Terr. 609; *Parks v. Elmore*, 59 Wash. 584, 110 Pac. 381.

Subsequent to the contract, a number of letters passed between the parties which have been made a part of the record. We cannot find anything in any of them which would support a different conclusion from that reached. Both counsel have cited many cases which have been read with interest, but it would serve no useful purpose to otherwise refer to them. They support the law as we have declared it, the only difference being as to the facts to which the law applies.

Judgment affirmed.

ELLIS, C. J., MOUNT, HOLCOMB, and CHADWICK, JJ., concur.